**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ZAHARAH VALENTINE | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:23-cv-2899 |
| BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS AND BALTIMORE CITY PUBLIC SCHOOLS | * | |
| | * | |
| | * | |
| Defendants. | | |
| | * | |

\*     \*     \*     \*     \*     \*          \*     \*     \*     \*     \*     \*

## <u>COMPLAINT</u>

COMES NOW, Zaharah Valentine ("Ms. Valentine" or "Plaintiff"), by and through her undersigned Counsel, bring this action against the Baltimore City Board of School Commissioners ("BCBSC") and Baltimore City Public Schools ("Baltimore Schools") (Collectively the "Defendants") for discrimination against the Plaintiff on the basis of disability in violation of the American's with Disabilities Act, 42 U.S.C. §§12101 et seq. (the "ADA") and for retaliation in violation of Title VII of the Civil Rights act of 1991, as amended, 42 U.S.C. §2000e, et seq. ("Title VII") and for harassment pursuant to Md. State Gov't § 20-1009(b).

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331.

2. This Court has authority to grant declaratory judgement pursuant to 28 U.S.C. §2201 and related relief pursuant to 28 U.S.C. §2202, and the

authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. §12117.

3. Venue is proper in this judicial district under 42 U.S.C. §2000e-5(f) and 28 U.S.C. §§1391(b), since the unlawful employment practice was committed in this district. The Defendant conducts business in this judicial district and a substantial part of the events giving rise to this cause of action occurred in this judicial district.

## EXHAUTION OF ADMINISTRATIVE REMEDIES

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and subsequently amended it.

5. The EEOC issued Plaintiff a Right to Sue Letter ("RTS") on October 4, 2023.

6. The current action is being brought within the statutory 90-days from the EEOC's issuance of the RTS letter.

## PARTIES

7. The Plaintiff, Zaharah Valentine, is a resident of the State of Maryland and is currently employed by the Defendant, the Baltimore City Public Schools.

8. The Defendant, Baltimore City Public Schools is a public school system that is located in Baltimore, Maryland and is an employer with this meaning of 42 U.S.C. §12111(5) and 42 U.S.C. §20002(b).

9. The Defendant, City Board of School Commissioners, is a duly formed Board of Education pursuant to Education Article of the Code of Public General

Laws of Maryland § 3-108.1, which governs and manages Baltimore Schools and its relevant policies.

**FACTS**

10. Ms. Valentine began her employment with Baltimore Schools on June 18, 2011.

11. She had previously worked as a school principal in Baltimore Schools, prior to her re-hire in 2011

12. Ms. Valentine was subject to violence within the school when a student physically assaulted her on school property in December 2017.

13. Ms. Valentine suffered bodily harm and injury in the assault.

14. Ms. Valentine was traumatized by the assault on school property.

15. Ms. Valentine suffers from Post-Traumatic Stress Disorder ("PTSD").

16. Ms. Valentine's PTSD is attributed in full or in part to the assault that occurred on Baltimore Schools' property.

17. Baltimore Schools was aware of the assault and of the PTSD.

18. On or around October 14, 2020, Plaintiff moved to a new position with Baltimore Schools. She became the Director – Education Pipeline and Induction working at Baltimore Schools District Office.

19. Plaintiff's supervisor at the time was Ashley B. Stewart ("Mr. Stewart") who was, at all times relevant, the Executive Director of Talent and Organizational Development for Baltimore Schools.

20. Ms. Valentine's performance was satisfactory and met the employer's standards.

21. Ms. Valentine suffers from anxiety and depression in addition to PTSD.

22. These conditions substantially limit major life activities, including performing work.

23. Ms. Valentine is considered a disabled person under the requisite provisions of the ADA.

24. On December 22, 2020, Ms. Valentine requested Reasonable Accommodations for her disabilities.

25. Ms. Valentine made the formal request for reasonable accommodations via an email to her supervisor.

26. Baltimore Schools claims to have misplaced the request and failed to acknowledge or grant the request for at least six months.

27. The delay caused by Defendant caused Plaintiff's diagnosis and condition to worsen.

28. On March 1, 2021, Ms. Valentine again formally requested reasonable accommodations.

29. Ms. Valentine sent her March 1, 2021, request to Baltimore Schools EEO manager, Courtney Calhoun ("Mr. Calhoun").

30. Ms. Valentine was forced to take Family Medical Leave Act ("FMLA") between March 1, 2021, and April 18, 2021.

31. Upon her return from FMLA leave, Ms. Valentine made a third request for reasonable accommodations, reiterating her request from March 1, 2021.

32. On June 22, 2021, Defendant approved a reasonable accommodation (the "Approval").

33. In the Approval, Defendant admits knowledge of Ms. Valentine's health conditions including PTSD, anxiety, and depression.

34. In the Approval, Defendant acknowledges knowledge of Ms. Valentine's having trouble with sleeping, concentrating, interacting with others, speaking, and performing manual tasks due to Ms. Valentine's disabilities.

35. In the Approval, Defendant agrees to accommodate Ms. Valentine by:

    a. Providing clear expectations and laying out a collaborative process between Ms. Valentine and her supervisor if new primary or process tasks are introduced to Ms. Valentine's portfolio of work.

    b. Project management by creating a project plan for all projects including clearly defined roles, breaking up of the project into smaller components, negotiate and agree upon timelines, tracking progress, and ensuring the integration of racial equity throughout the process.

    c. Clear and effective communication by both the supervisor and Ms. Valentine engaging in collaborative conversations to agree on expectations, keeping the lines of communication open, and creating mutual accountability to help Ms. Valentine "managing upward on a project or responsibility that is new in nature."

36. Jeremy Grant-Skinner ("Mr. Grant-Skinner") was Ms. Valentine's second line supervisor.

37. In or around June 2021, Mr. Grant-Skinner began bypassing Ms. Valentine's supervisor and directly delegating large-scale projects and tasks to Ms. Valentine.

38. Mr. Grant-Skinner did not engage in setting clear expectations and did not engage in a collaborative process with Ms. Valentine.

39. Mr. Grant-Skinner failed to work with Ms. Valentine to create project plans, negotiate or agree to timelines, track progress, or engage in a process to clearly define roles.

40. Mr. Grant-Skinner repeatedly failed to engage in open and collaborative conversations.

41. On July 27, 2021, Mr. Stewart formally asked Mr. Grant-Skinner to adhere to Ms. Valentine's approved accommodations.

42. The same day, Jane Ehrenfeld ("Ms. Ehrenfeld"), an attorney and the Director of Fair Practices and Compliance, provided Mr. Grant-Skinner with a copy of the final Approval letter.

43. Defendant has never expressed any claim of or evidence of undue hardship for Ms. Valentine's accommodation.

44. Despite being aware of the accommodations, Mr. Grant-Skinner continued to violate the approved reasonable accommodations by refusing to comply with the terms of the Approval between June 2021 and December 2021.

45. Ms. Valentine continuously communicated with Public Schools Equal Employment Office ("EEO"), documenting and reporting violations of Mr. Grant-Skinner's violations of Ms. Valentine's reasonable accommodations.

46. Ms. Valentine repeatedly engaged in protected activity by reporting violations of her reasonable accommodations.

47. Specifically, Ms. Valentine complained about her supervisors violating her reasonable accommodations on

    a. August 5, 2021;

    b. October 15, 2021;

    c. October 28, 2021;

    d. December 9, 2021; and

    e. December 10, 2021.

48. The EEO office informed Ms. Valentine that they would investigate based on her December 10, 2021, EEO complaint.

49. Mr. Grant-Skinner made it clear that he would not comply with the Approval or the reasonable accommodations.

50. Mr. Grant-Skinner told Ms. Valentine that the fast pace of the office required Ms. Valentine to be more flexible. As far as Ms. Valentine is aware, no other agent of the Defendant has ever expressed that her accommodations presented any hardship to the Defendant.

51. Between 2011 and 2020, Ms. Valentine's official workplace evaluation was rated as effective or highly effective.

52. In June 2021, Mr. Stewart informally rated Ms. Valentine as meeting expectations and progressing towards achieving all aspects of the job responsibilities as expected.

53. Between 2011 and December 2021, Ms. Valentine had no disciplinary action and no performance improvement plans.

54. Baltimore Schools allegedly launched an investigation (the "Investigation") into Ms. Valentine's allegations of discrimination using an external investigator.

55. The Investigation began after Ms. Valentine had made at least five (5) complaints of violations of her disability rights.

56. During this investigation, Baltimore Schools for the first time reported alleged poor performance occurrences to the external investigator.

57. Despite the absence of prior indications of poor performance, Defendant retaliated against Ms. Valentine for filing an EEO complaint by alleging poor performance to the investigators.

58. On December 10, 2021, Mr. Grant-Skinner informed Ms. Valentine that he would be removing her from her current role due to poor performance.

59. Mr. Grant-Skinner informed Ms. Valentine that her salary would be adjusted based on her new position which would be identified by Baltimore Schools at some later time.

60. Ms. Valentine was removed from her position on December 10, 2021.

61. Plaintiff was not offered a transfer to any other available position nor was she transferred involuntarily to any other available position by Defendant.

62. By failing to transfer Ms. Valentine into any position on December 10, 2021, Defendant effectively placed her on suspension.

63. On December 15, 2021, Ms. Valentine filed a formal EEO complaint against Mr. Grant-Skinner.

64. Ms. Valentine continued to correspond and work with the Defendant to find a position for her to be "transferred" into.

65. In June 2022, Ms. Ehrenfeld threatened to enforce a demotion of Ms. Valentine because it was "unrealistic" for a qualified employee in a director role to have the reasonable accommodations Ms. Valentine had sought and been granted by Baltimore Schools as a director.

66. Ms. Ehrenfeld then offered Ms. Valentine three lower paying teacher level roles, not comparable in terms of salary or benefits to Ms. Valentine's prior position.

67. All three positions offered to Ms. Valentine, by Defendant, were a demotion.

68. While Ms. Valentine was without a position, she was actively seeking positions within Baltimore Schools.

69. Between February 2022 and May 2022, Baltimore Schools contacted Ms. Valentine by and through its EEO Manager, Mr. Calhoun, to request medical records.

70. Mr. Calhoun, in a May 23, 2022, email informed Plaintiff that Baltimore Schools would be unable to move forward with finding her (Plaintiff) a position that Plaintiff could perform with or without accommodations until they (Defendants) had received all of Plaintiff's medical records.

71. On June 13, 2022, Baltimore Schools again emailed Plaintiff to inform her that the reason it required medical records was in order to evaluate her based on her disability before offering her any position.

72. In August, Ms. Valentine informed Baltimore Schools that per EEOC guidelines, a worker applying for a different position within the same organization must be treated as a new employee and that any such application cannot be contingent upon reasonable accommodations at the previous job, as this creates discrimination in hiring based on disability.

73. In response, Ms. Ehrenfeld for the Defendants reiterated that failure to provide medical information to Baltimore Schools could result in Ms. Valentine being placed in a teacher-level (lower) position within Baltimore Schools.

74. Ms. Ehrenfeld's threat was that, absent medical records and a disability evaluation, Baltimore Schools could simply demote Ms. Valentine.

75. Baltimore Schools insisted that it was within its rights to demand medical records prior to considering Ms. Valentine for any new positions.

76. On September 12, 2022, Ms. Valentine asked for and was offered the role of Director of Professional Development. She accepted.

77. On September 16, 2022, by and through Ms. Ehrenfeld, the Defendants again stated that <u>before</u> she could be considered for this position, Ms. Valentine was required to give Baltimore Schools access to her doctors, sign a HIPAA release, and get conformation from her doctor that she was able to perform the job for which she was applying.

78. By September 16, 2022, Ms. Valentine had been without a position for over nine months.

79. Ms. Valentine complied.

80. On October 7, 2022, Ms. Ehrenfeld emailed Plaintiff to inform her that the position was no longer available due to major restructuring.

81. Currently Ms. Carla McCoy is the Director of Professional Development at Baltimore Schools.

82. Currently Ms. Kimberly McMenamin is listed as the "coordinator" of Professional Development and Training for Baltimore Schools.

83. Ms. Valentine appealed the decision to "transfer" her, but her appeal was denied by the BCBSC.

84. Ms. Valentine then appealed the decision to transfer her to the Maryland Board of Education (the "MBE").

85. The MBE found that the right to transfer an employee per the needs of the system, enshrined in Maryland law, does not entitle a school district to transfer an employee into limbo and that explicit in the ability to transfer an

employee is the expectation that the employee will be transferred to a new position.

86. Ms. Valentine was never transferred or reinstated despite the passage of nearly a year since she was removed from her prior position.

87. Due to the length of the time Ms. Valentine spent without a position, it is apparent Ms. Valentine's removal was not a transfer at all but a suspension.

88. Ms. Valentine's suspension was not initially approved by Sonja Brookins Santelises ("Ms. Santelises") who is the Chief Executive Officer (the "CEO") of Baltimore Schools.

89. Maryland law vests the right to transfer an employee in the CEO.

90. At the time of her suspension/transfer, Ms. Valentine was not teacher or certified educational personnel assigned to Baltimore Teachers Union.

91. BCBSC allows the CEO to delegate to the Chief Human Capital Officer the responsibility for transferring and assigning all teachers and other certified educational personnel assigned to the Baltimore Teachers Union Bargaining Unit.

92. There is no mention or indication in the legislation and rules that BCBSC intended for the delegation of CEO responsibilities with regard to transferring or reassigning teachers and other certified educational personnel assigned to the Baltimore Teachers Union Bargaining Unit also included the right to transfer all employees including directors and exempt employees.

93. At all times relevant to the transfer/suspension Mr. Grant-Skinner was the Chief Human Capital Officer.

94. Ms. Valentines suspension was put in place by and enforced by Mr. Grant-Skinner.

95. After learning of the suspension/transfer Ms. Santelises wrote a second letter to Ms. Valentine in which she reiterated and approved the suspension/transfer.

96. Ms. Santelises' letter does not contain any references to Plaintiff's job performance.

97. On February 27, 2023, after nearly two academic years had elapsed, Baltimore Schools placed Plaintiff into a position.

98. The position, Director of Secondary School Support, is a short-term position that is not fully funded.

99. Ms. Valentine was not assigned to the proper department.

100. In March of 2023, Ms. Valentine was informed by Baltimore Schools personnel that her position did not exist and that she had been forced upon the current staff by the Office of Academics, who created the position.

101. Placing Ms. Valentine in an ad-hoc position which can be eliminated at any time is very different with reference to the terms, conditions, and privileges of her prior employment as the Director – Education Pipeline and Induction position.

102. Ms. Valentine has not received an evaluation since 2020.

103.	Ms. Valentine has not received a raise since 2020.

104.	Ms. Valentine has had to engage legal counsel to ensure that she was actually transferred and given a new position. Despite this she does not have a permanent position.

## COUNT I FAILURE TO ACCOMMODATE

105.	Plaintiff re-alleges and incorporates by reference the previous averments, and the paragraphs, infra, into this count as though fully set forth herein and further alleges that Defendant failed to accommodate her disability.

106.	Defendant discriminated against Plaintiff when it failed to require Mr. Grant-Skinner, Plaintiff's second line supervisor, to adhere to the reasonable accommodations requested by Plaintiff and granted by Baltimore Schools.

107.	Defendant discriminated against Plaintiff when it failed to take action to protect Plaintiff's rights as a disabled person by enforcing the granted reasonable accommodations despite being aware that a supervisor within the organization was violating these rights.

108.	By and through Mr. Grant-Skinner, the Chief Human Capital Officer, Defendants discriminated against Ms. Valentine when they refused to follow her granted reasonable accommodations, thereby denying Ms. Valentine the right to a reasonable accommodation without providing any reason or hardship.

109. Plaintiff has suffered hardship and damages and has continued to incur attorney's fees and costs for appealing Baltimore Schools decision, filing an appeal with the Maryland Board of Education, filing, and following up on an EEOC complaint, and bringing this action.

## COUNT II DISCRIMINATION IN HIRING

110. Plaintiff re-alleges and incorporates by reference the previous averments, and the paragraphs, infra, into this count as though fully set forth herein and further alleges that Defendant discriminated against her by making her hire into a new position contingent upon her disability.

111. Defendants discriminated against the Plaintiff when they refused to transfer her into a new position.

112. Defendants discriminated against Plaintiff when they refused to offer her a new position without first viewing doctors notes and medical information that they claim would demonstrate Ms. Valentine could perform the new job functions without or without a reasonable accommodation.

113. Defendants discriminated against Plaintiff when they made the position of Director of Professional Development contingent upon reviewing her medical records and contingent upon her disability.

114. Defendants discriminated against the Plaintiff when they threatened to demote her or place her in a lower position if she did not provide Defendants with her medical records pertinent to her disability.

115. Plaintiff has suffered hardship and damages and has continued to incur attorney's fees and costs for appealing Baltimore Schools decision, filing an appeal with the Maryland Board of Education, filing, and following up on an EEOC complaint, and bringing this action.

## COUNT III RETALIATION

116. Plaintiff re-alleges and incorporates by reference the previous averments, and the paragraphs, infra, into this count as though fully set forth herein and further alleges that Defendant retaliated against her by placing her on a suspension under the guise of a transfer.

117. Defendants retaliated against Plaintiff by alleging inadequate performance to EEO investigators investigating Plaintiff's complaints that her reasonable accommodations were being ignored.

118. Defendants retaliated against the Plaintiff when Baltimore Schools removed her from her position after Plaintiff had repeatedly engaged in protected activity.

119. Defendants retaliated against the Plaintiff by allowing Mr. Grant-Skinner to transfer/suspend Plaintiff after Mr. Grant-Skinner repeatedly

violated Plaintiff's reasonable accommodations and Plaintiff repeatedly named Mr. Grant-Skinner in protected activity (complaints to the EEO office).

120. Defendants retaliated against the Plaintiff by improperly vesting Mr. Grant-Skinner with the right to transfer a non-teacher after Ms. Valentine had filed formal EEO complaint against Mr. Grant-Skinner which, itself, came after multiple written complaints.

121. Defendants retaliated against Plaintiff by failing to identify a position for Plaintiff and failing to place her in any position for two years forcing her to miss two academic years, adversely affecting her career.

122. Defendants retaliated against Plaintiff for transferring her into an ad hoc position without job security, terms, conditions or privileges of her previous position.

123. Plaintiff has suffered hardship and damages and has continued to incur attorney's fees and costs for appealing Baltimore Schools decision, filing an appeal with the Maryland Board of Education, filing, and following up on an EEOC complaint, and bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

124. Grant a judgement in favor of Plaintiff to restore Plaintiff to her former position within the Baltimore Public School System or require the

Defendant to transfer Plaintiff into an equal position with the same terms, conditions, and benefits of employment as the position from which Defendant removed Plaintiff;

125.    Order Defendant to amend its criteria for hiring internal employees to be compliant with Federal Law in that disabled employees may not be asked about their disability as part of the hiring (or transferring) process nor required to provide health information concerning disabilities or reasonable accommodations associated with their previous jobs.

126.    Award Plaintiff compensation for lost wages, lost due to Plaintiff not receiving any raises for two years.

127.    Award the Plaintiff compensatory and punitive damages as allowed for pursuant to Md. State Gov't § 20-1009(b), 42 U.S. Code § 1981a(a)(2) and 42 U.S. Code § 1981a(a)(3).

128.    Award Plaintiff all reasonable Attorney's Fees and Costs associated with bringing this action.

Plaintiff prays for such and additional relief as justice may require and that this honorable Court may find appropriate.


## JURY DEMAND

Plaintiff hereby demands a trail by jury of all issues so triable pursuant to Fed. R. Civ. P. 38 and 42 U.S. Code § 1981a(c).

Dated: 10/25/23

Respectfully Submitted,

The Quinn Law Group

/s/ Donald Quinn
Donald Quinn, Fed. Bar No. 22324
846 Ritchie Highway, Suite 2A
Severna Park, Maryland 21146
443-247-5444
donquinn@thequinnlawgroup.com

/s/ Katherine Patton
Katherine Patton, Fed Bar No. 30693
846 Ritchie Highway, Suite 2A
Severna Park, Maryland 21146
443-247-5444
kat@thequinnlawgroup.com
*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2023, a copy of the foregoing Complaint was served on the Defendant and Mailed By USPS Registered Mail, Restricted Delivery to the following:

Baltimore City Public Schools
District office
200 E. North Avenue
Baltimore, MD 21202
*Defendant*

Baltimore City Board of School Commissioners
200 E. North Avenue, Room 406
Baltimore, Maryland 21202
*Defendant*

/s/ Donald Quinn
Donald Quinn